1

Fred W. Schwinn (SBN 225575)
CONSUMER LAW CENTER, INC.

2

12 South First Street, Suite 1014
San Jose, California 95113-2418

3

Telephone Number: (408) 294-6100
Facsimile Number: (408) 294-6190

4

Email Address: fred.schwinn@sjconsumerlaw.com

5

Attorney for Plaintiff
SUSAN RAE OWENS

6

7

8

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

9

**SAN JOSE DIVISION**

10

| SUSAN RAE OWENS, | Case No. C07-04400-JF-PVT |
|---|---|

11

Plaintiff,

**MEMORANDUM IN SUPPORT**
**OF MOTION FOR ATTORNEY**
**FEES AND COSTS**

12

v.

13

ERICA L. BRACHFELD, A PROFESSIONAL
CORPORATION, D/B/A BRACHFELD &

| | Hearing Judge: | Honorable Jeremy Fogel |
|---|---|---|

14

ASSOCIATES, P.C., D/B/A LAW OFFICES
OF BRACHFELD & ASSOCIATES, P.C., a

Hearing Date:    October 3, 2008
Hearing Time:    9:00 a.m.

15

California corporation, and ERICA LYNN
BRACHFELD, individually and in her official

Courtroom:       3, 5th Floor
Place:           280 South First

16

capacity,

Street
San Jose, California

17

Defendants.

18

19

COMES NOW the Plaintiff, SUSAN RAE OWENS, by and through counsel Fred W.

20

Schwinn of the Consumer Law Center, Inc., and hereby submits her Memorandum in Support of

21

Motion for Attorney Fees and Costs.

22

**INTRODUCTION**

23

Fee petitions of prevailing parties should not result in a "second major litigation"[1], yet, in

24

experience of Plaintiff's counsel (and probably in Court's experience as well) they almost inevitably

25

end up being just that.

26

/ / /

27

28

[1] *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 1939, 76 L. Ed. 2d 40 (1983).

-1-

## FACTS OF THE CASE

This case was brought by Plaintiff, SUSAN RAE OWENS (hereinafter "Plaintiff"), against Defendant, ERICA L. BRACHFELD, A PROFESSIONAL CORPORATION, (hereinafter "B&A), and Defendant, ERICA LYNN BRACHFELD (hereinafter "BRACHFELD") (collectively "Defendants"), for various violations of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. (hereinafter "FDCPA"), and the California Rosenthal Fair Debt Collection Practices Act, California Civil Code § 1788 et seq. (hereinafter "RFDCPA"), which prohibit debt collectors from engaging in abusive, deceptive and unfair collection practices. Generally, Plaintiff is alleged to have owed a consumer debt which was consigned, placed or otherwise transferred to Defendants for collection from Plaintiff. The debt being collected stemmed from a consumer credit card account financed by Capital One Bank, which was later sold, assigned or otherwise transferred to NCO Financial Systems, Inc.

Plaintiff contends that the collection letter sent by Defendants was sent in an envelope which contained a window through which information printed on the collection letter could be seen by anyone who handled the collection letter. Further, the collection letter and the envelope it was mailed in failed to state the true legal name of Defendants' business entity, instead using false business names which are not registered as California corporations or otherwise entitled to do business in the state of California.

## PROCEDURAL HISTORY

On August 27, 2007, Owens filed a Complaint in this Fair Debt Collection Practices Act suit against the Defendants.[2] Defendants filed an Answer containing <u>only</u> a general denial and state law affirmative defenses on September 21, 2007.[3] On September 22, 2007, Plaintiff's counsel sent Defendants' counsel a letter outlining the deficiencies in the filed Answer and suggesting that Defendants avail themselves of the limited opportunity to file an Amended Answer provided by Fed. R. Civ. P. 15(a).

---

[2] Doc. 1.

[3] Doc. 5.

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY FEES         Case No. C07-04400-JF-PVT

1    On December 28, 2007, Plaintiff's Motion for Summary Judgment was filed herein.  On

2    August 22, 2008, this Court entered an <u>Amended Judgment</u> (Doc. 23) in favor of Plaintiff pursuant

3    to the terms of the Court's <u>Order Granting Summary Judgment</u> (Doc. 21) of August 19, 2008.  The

4    Court granted a Judgment in favor of Plaintiff in the amount of $2,100.00, plus her reasonable

5    attorney fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).  The Court's <u>Order Granting Summary</u>

6    <u>Judgment</u> (Doc. 21) instructed Plaintiff's counsel to submit an itemization of his fees in connection

7    with this case.

8    On August 29, 2008, Plaintiff filed her <u>Motion for Attorney Fees and Costs</u> in accordance

9    with the order of this Court.  This Memorandum of Law is submitted in support thereof.

10                              **SUMMARY OF ARGUMENT**

11    A.    Plaintiff is Entitled to a Full Award of Her Attorney Fees and Costs.

12    B.    Plaintiff's Attorneys' Fees Are to Be Awarded Pursuant to the Lodestar Formula.

13    C.    The Laffey Matrix Supports the Reasonableness of the Requested Hourly Rate.

14    D.    The *Kerr* Factors Support the Reasonableness of the Requested Fee.

15    E.    Plaintiff is Entitled to a Supplemental Award of Attorney Fees for the Time Expended upon

16          This Motion.

17                          **STATEMENT OF QUESTION PRESENTED**

18    What is the amount of reasonable attorney fees and costs that should be awarded to the

19    Plaintiff?

20                              **ARGUMENT AND AUTHORITIES**

21    **A.    Plaintiff is Entitled to a Full Award of Her Attorney Fees and Costs.**

22    This case was resolved when this Court granted Plaintiff's Motion for Summary Judgment

23    against Defendants in the amount of $2,100.00, plus an additional amount to reasonably compensate

24    Plaintiff for her attorney's fees and costs.  Plaintiff now seeks her reasonable attorney's fees and

25    reasonable costs accrued in this matter.

26    **B.    Plaintiff's Attorneys' Fees Are to Be Awarded Pursuant to the Lodestar**
             **Formula.**

27

28    The U.S. Supreme Court has explained the calculation for an award of attorney's fees:

-3-

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  The calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.[4]

Although this decision, and others cited hereinafter, arise in the context of the Civil Rights Attorney's Fees Award Act, 42 U.S.C. § 1988, these criteria are equally applicable here.  "The standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'"[5]  "We have stated in the past that fee-shifting statutes' similar language is 'a strong indication' that they are to be interpreted alike."[6]

The "Lodestar" Formula

"In the Ninth Circuit, the customary method of determining attorney fees is the 'lodestar method.'  The court calculates the "lodestar" amount by multiplying the number of hours the prevailing party reasonable expended in the litigation by a reasonable hourly rate."[7]

Reasonable Hours Spent

In order to determine the reasonable number of hours spent on the litigation, courts require that "an attorney seeking a fee award must support her/his claim of hours worked by submitting detailed time records."[8]  Plaintiff's counsel has maintained "detailed time records."

Counsel's time records were made contemporaneously with the work being preformed.  In addition to being meticulous in their detail, Plaintiff's counsel have avoided "block billing" in their time records—discrete tasks are broken down and listed individually and not lumped in with other

---

[4]  *Hensley v. Eckerhart*, 461 U.S. at 433.

[5]  *Id.* at n.7.

[6]  *Independent Federation of Flight Attendants v. Zipes*, 491 U.S. 754, 759 n.2, 109 S. Ct. 2732, 105 L. Ed. 2d 639 (1989) (*quoting Northcross v. Memphis Bd. of Education*, 412 U.S. 427, 428, 93 S. Ct. 2201, 37 L. Ed. 2d 48 (1973)).

[7]  *Ruby v. Invictus Franchising, Inc.* 2001 U.S. Dist. LEXIS 22320 at *2, (Dist. of Oregon 2001) (*citing Morales v. City of San Rafael*, 96 F.3d 359, 393 (9th Cir. 1996)) (citations omitted); *See also Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987).

[8]  *Peake v. Chevron Shipping Co.*, 2004 US Dist. LEXIS 15564 at *25, (N.D. Cal. 2004) (citing *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987)).

1  tasks.  Finally, counsel's time records reveal, through the use of initials, each person for whom fees

2  are sought and the hours of compensation requested.  Copies of Plaintiff's counsel's billing

3  summaries are attached to the Declaration of Fred W. Schwinn and filed herein.

4  Reasonable Hourly Rate

5          While "[w]e . . . recognize that determining an appropriate 'market rate' for the
           services of a lawyer is inherently difficult," *Blum v. Stenson*, 465 U.S. 886, 895
6          n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984), the established standard when
           determining a reasonable hourly rate is the "rate prevailing in the community for
7          similar work performed by attorneys of comparable skill, experience, and
           reputation." *Barjon v. Dalton*, 132 F.3d 496, 502 (9th Cir. 1997) (internal quotation
8          marks omitted).[9]

9  The focus must be on the "rate prevailing in the community for similar work performed by attorneys

10 of comparable skill, experience, and reputation."[10]  "The relevant community is the forum in which

11 the district court sits."[11]   In this case the relevant community is the San Francisco Bay Area.

12 Plaintiff has provided the Court with competent and trustworthy evidence of the San Francisco Bay

13 Area attorney fee market in the form of declarations of her counsel and two other San Francisco Bay

14 Area attorneys.  "The court may not use its own knowledge to establish the appropriate rate unless

15 the evidence of prevailing market rates before the court is inadequate."[12] The declarations submitted

16 by Plaintiff are adequate and trustworthy evidence of the market rate for comparable attorneys in

17 the San Francisco Bay Area.  "A district court abuses its discretion when it ignores the parties'

18 market evidence and sets an attorney's hourly rate using the rates it consistently grants."[13]

19 Attorney's Rate

20          The Consumer Law Center, Inc., herewith submits the Declaration of Fred W. Schwinn.

21

22

23          [9] *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973 (9th Cir. 2008).

24          [10] *Barjon v. Dalton*, 132 F.3d 496, 502 (9th Cir. 1997).

25          [11] *Id.* at 500.

26          [12] *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1234 (10th Cir. 2000)
   (*quoting Case* v. Unified Sch. Dist. No. 233, 157 F.3d 1243, 1257 (10th Cir. 1998)) and *Lucero v.
27 City of Trinidad*, 815 F.2d 1384, 1385 (10th Cir. 1987)).

28          [13] *Id.* (*citing Case*, 157 F.3d at 1255).

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY FEES          Case No. C07-04400-JF-PVT

1    Based on his personal experience and the rates that he charges fee paying clients, this Declarant

2    believes that requested hourly rate of $325.00 is entirely fair and reasonable given market rates for

3    representation of consumers in debtor-creditor litigation.

4    Total "Lodestar" Fees Requested

5         In total Plaintiff requests the following attorney fees based on the "Lodestar" formula:

6
7

| Name | Position | Hours | Rate | Total |
|------|----------|-------|------|-------|
| Fred W. Schwinn | Attorney | 19.0 | $ 325.00 | $6,175.00 |
| Jovanna Longo | Law Clerk | 6.8 | $125.00 | $   850.00 |
| | | | | $7,025.00 |

8

9         **C.    The Laffey Matrix Supports the Reasonableness of the Requested Hourly Rate.**

10        The Laffey Matrix represents an attempt by the courts to develop an objective approach to

11   calculate the appropriate hourly rate for fee awards.[14]  In *Laffey* the plaintiffs submitted, "a barrage

12   of data, including twenty-five attorney affidavits secured specifically for [the] litigation, information

13   gleaned from affidavits filed in other cases, and fee data reflected in previous judicial decisions" in

14   support of their requested hourly rate.[15]  From that data, the *Laffey* Court created a matrix intended

15   to show the prevailing rates for lawyers of given levels of experience and competence.[16]  This matrix

16   is commonly referred to as the Laffey Matrix.

17        The current Laffey Matrix may be found at http://www.usdoj.gov/usao/dc/Divisions/

18   Civil_Division/Laffey_Matrix_7.html.  According to the Department of Justice website, the Matrix

19   is adjusted annually to reflect the effects of inflation.  "The rates for subsequent yearly periods were

20   determined by adding the change in the cost of living for the Washington, D.C. area to the applicable

21   rate for the prior year, and then rounding to the nearest multiple of $5."[17]

22        The Laffey Matrix has been used by this Court in determining the appropriate hourly rate

23

24        [14]  *In re HPL Techs, Inc.*, 366 F. Supp. 2d 912, 921 (N.D. Cal. 2005).

25        [15]  *Laffey v. Northwest Airlines*, 572 F. Supp. 354, 371-72 (D.C. Dist. 1983) (aff'd in part, rev'd in part on other grounds, *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4 (D.C. Cir. 1984)).

26        [16]  *Id.* at 372.

27
28        [17]  Laffey Matrix 2003-2008, Explanatory note 3 at http://www.usdoj.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_7.html.

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY FEES          Case No. C07-04400-JF-PVT

for attorney fees in the San Francisco Bay Area.[18]  This Court, however, noted that the rates in the Laffey Matrix applied to the District of Columbia, rather than the San Francisco Bay Area.  In order to resolve this impediment, this Court adjusted the figures to more accurately reflect the differential cost of living between the District of Columbia and the San Francisco Bay Area.[19]  This Court concluded that the, "Washington-Baltimore area has a +15.98% locality pay differential; the San Francisco-Oakland-San Jose area has a +26.39% locality pay differential.  Thus, adjusting the Laffey Matrix figures upward by approximately 9% will yield rates appropriate for the Bay area."[20]  Using this adjustment, this Court in 2005 found that "attorneys with 8-10 years of experience bill $305/hour."[21]  In 2008 the Laffey rate has increased to $345/hour.  Plaintiff notes that this is also consistent with recent fee awards in this District even in cases that have not relied on the Laffey Matrix.[22]

       **D.**      **The *Kerr* Factors Support the Reasonableness of the Requested Fee.**

       Once the Lodestar calculation of attorney's fees should be adjusted, the Court may "adjust the presumptively reasonable lodestar figure on the basis of the *Kerr* factors that are not already subsumed in the initial lodestar calculation."[23]  The *Kerr* factors are (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the

---

[18]  *In re HPL Techs., Inc.,* 366 F. Supp. 2d 912, 921 (N.D. Cal. 2005).

[19]  *Id.* (Locality pay differential tables are currently available at http://www.opm.gov/oca/05tables/indexGS.asp).

[20]  *Id.*

[21]  *Id.*

[22]  *See Navarro v. General Nutrition Corp*, 2004 U.S. Dist. LEXIS 24258, at *10-*11 (N.D. Cal. 2004), (attorney with 10 years experience awarded $325).

[23]  *Morales. v. City of San Rafael*, 96 F.3d 359, 364 (9th Cir. 2004).

1  experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the

2  nature and length of the professional relationship with the client, and (12) awards in similar cases."[24]

3  Analysis under the *Kerr* factors indicates that the Lodestar figure requested in this matter is

4  reasonable without adjustment.

5          1.    <u>The novelty and difficulty of the questions involved, and the skill requisite to</u>
              <u>perform the legal services properly, and the time and labor required.</u>

6

7          Even if the case is straightforward, the lodestar amount may not be reduced.[25]  Additionally,

8  Plaintiff's counsel has a small law firm and does much of his work on his own.  As stated in *Bailey*

9  *v. District of Columbia*,[26]

10             . . . attorneys, like plaintiff's counsel, operating either as solo practitioners or in
               small firms, often lack the resources to retain a large staff of junior lawyers who
11             could handle [certain more clerically related] tasks more economically.  Denying
               plaintiffs compensation for these tasks would unfairly punish plaintiffs and their
12             counsel for not staffing this case as if they had the manpower of a major law firm.

13         2.    <u>The preclusion of other employment by the attorney due to acceptance of the case</u>.

14         The time spent on this case was not, and could not be, spent at the same time on other cases.

15         3.    <u>The customary fee</u>.

16         Plaintiff's fee request is well within the range of similar work before this Court and is the

17  customary hourly rate charged by Mr. Schwinn for his clients.  The market rate in the San Francisco

18  Bay Area for federal litigation of consumer law issues that are similar in difficulty and complexity

19  to the issues herein is a range extending from $275 to $500 per hour, depending on the skill,

20  experience and reputation of the attorney.  The requested hourly rate of $325.00 for Mr. Schwinn

21  is entirely fair and reasonable, given his experience, qualifications and expertise in the

22

23

24         [24] *Id.,* note 8.

25         [25] *DiFillippo v. Morizio*, 759 F.2d 231, 235 (2nd Cir. 1985);  *See Hughes v. Repko*, 478 F.2d

26  483, 491 (3rd Cir. 1978) (Judge Garth concurring: "To reduce the fee award in a case where there
   is a strong likelihood of success makes little sense.  Such a reduction unfairly penalizes the attorney

27  who is employed to prosecute a case where the constitutional or statutory violation is clear.").

28         [26] 839 F. Supp. 888, 891 (D.D.C. 1993).

-8-

1 representation of consumers.[27]

2     4.    Whether the fee is fixed or contingent.

3     Here, as in most all cases under the Consumer Credit Protection Act, the fee is contingent

4 – not on the amount of damages, but by award of the Court or agreement of opponent. In a private

5 attorney general case such as this, Congress encourages counsel to bring suit, recognizing that

6 counsel cannot charge the client an hourly fee (and that counsel must be paid from the recovery),

7 because the fee may be out of proportion to the recovery.

8     If contingent, the fee award should compensate counsel for the risk of receiving no

9 compensation.[28] Moreover, it should permit counsel "to earn an income that would be competitive

10 with colleagues who get paid win or lose."[29]

11     "A contingent fee must be higher than the fee for the same legal services as they are

12 performed. The contingent fee compensates the lawyer not only for the legal services he renders,

13 but also for the loan of those services. The implicit interest rate on such a loan is higher because the

14 risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher

15 than that of a conventional loan."[30]

16     5.    The time limitations imposed by the client or by the circumstances.

17     No time limitations existed in this case except reasonableness.

18     6.    The amount involved and the results obtained.

19     Here, Plaintiff obtained $2,100 under the Judgment. The fact that the amount involved is

20 relatively small does not diminish Plaintiff's right to full recovery of attorney's fees and

21 disbursements.

22  

23    [27] See Declaration of Fred W. Schwinn in Support of Award of Attorney Fees and Costs ¶¶

24 3-7.

25    [28] *See, e.g., Blum v. Stenson*, 465 U.S. 886, 903 (1984)(Brennan, J., concurring); *Fabri v. United Techs Int'l, Inc.*, 193 F. Supp. 2d 480, 486 (D. Conn. 2002).

26    [29] *Bayless v. Irv Leopold Imports, Inc.*, 659 F. Supp. 942, 944 (D. Ore. 1987)(odometer

27 case)(*citing Blum*, 465 U.S. at 903 (Brennan, J., concurring).

28    [30] Posner, Economic Analysis of Law, 534, 567 (4th ed. 1992).

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY FEES     Case No. C07-04400-JF-PVT

1   "[C]ourts generally will not look to the size of the damage award in determining a reasonable

2   attorney's fee in consumer cases."[31]   Because the statute itself limits damages, the amount of

3   damages awarded does not justify a reduction in the lodestar amount.[32]

4   Courts have routinely rejected the "proportionality" argument as the basis for a fee award

5   in fee-shifting cases, where consumers' rights are being vindicated under consumer protection

6   statutes, civil rights laws, and the like.[33]

7   In a Consumer Credit Protection Act case such as this one, the award is often limited by

8   statute. "There is little reason to look to the limited award of statutory damages to determine the

9   reasonableness of attorney's fees which are generated by the unlimited costs of litigation."[34]

10      7.      The experience, reputation and ability of the lawyer or lawyers performing the
                services.

11

12   Plaintiff's counsel knows of very few attorneys who purport to be able to litigate plaintiffs'

13   Consumer Credit Protection Act.  Most attorneys do not recognize the legal issues involved in such

14   cases, and requests for representation are generally turned away by members of the Bar.  There are

15   only a handful of San Francisco Bay Area attorneys who are willing to accept Fair Debt Collection

16   Practice Act cases because of the special expertise required and the risk of nonpayment.  The failure

17   to adequately compensate consumer law plaintiffs has an effect on the ability of consumers to obtain

18   adequate legal representation for meritorious claims.

19      8.      The nature and length of the professional relationship with the client.

20   Oftentimes, where a party has a lengthy professional relationship with a client, the client

21   negotiates a "volume discount" for legal services.  Not so here.  In this case, Plaintiff is not a

22

23      [31]  *Smith v. Chapman*, 436 F. Supp. 58, 66 (W.D. Tex. 1977).

24      [32]  *Cowan v. Prudential Ins. Co.*, 935 F.2d 522, 527 (2nd Cir. 1991).

25      [33]  *See, e.g., City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986)(and cases cited therein).

26      [34]  *Postow v. Oriental Bldg. Ass'n*, 455 F. Supp. 781, 791 (D.D.C. 1978).  *See also Bittner

27   v. Tri-County Toyota*, 569 N.E.2d 464, 466 (Ohio S.Ct. 1991)(the remedial/consumer protection
     purpose of the statute is undermined if relatively small dollar amount case cannot fully compensate

28   the attorneys who take them on.)

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY FEES          Case No. C07-04400-JF-PVT

1    "volume" client.

2        9.        The undesirability of the case.

3        Consumer cases are often particularly undesirable to other practitioners for many reasons.

4    They are very often labor-intensive to obtain the requisite proof to win the case.  The results are

5    especially uncertain and taking them poses risks upon the practitioner.  It becomes very difficult for

6    consumers to vindicate their rights under consumer protection statutes as a result, especially where

7    small amounts of money are involved. It is not uncommon for defendants in consumer cases to spend

8    a lot of time and money vigorously defending the case.  Compensation is both contingent upon

9    success and deferred until after the end of the case – when (and if) it is collected from the defendant.

10   For these reasons, consumer protection plaintiffs' cases are not, for the most part, attractive cases

11   to most practitioners.   The vast majority of other attorneys simply will not take these cases.

12       For the time spent representing the Plaintiff in this matter, the Consumer Law Center, Inc.,

13   requests attorney fees in the amount of $7,057.50 and costs and expenses in the amount of $499.28.

14   **E.       The Purpose of the Award Is To Enforce Consumer Protection Statutes**

15       Attorneys are central to the enforcement of both the Consumer Credit Protection Act (of

16   which the FDCPA is a part) and the California Rosenthal act, by private attorneys general.  "The

17   value of an attorney's services is not only measured by the amount of the recovery to the plaintiff,

18   but also the non-monetary benefit accruing to others, in this case the public at large from this

19   successful vindication of a national policy to protect consumers from fraud in the used car

20   business."[35]

21       Such fees are particularly important in consumer cases, under the principles discussed by the

22   Supreme Court in *Rivera*, supra, a civil rights case.  "The public interest . . . is not limited to those

23   cases that push the legal envelope; it is perhaps most meaningfully served by the day-to-day private

24   enforcement of these rights, which secures compliance and deters future violations.  Congress meant

25   reasonable attorney's fees to be available to the private attorneys general who enforce the law."[36]

26
_____

27   [35] *Fleet Inv. Co. v. Rogers*, 620 F.2d 792, 794 (10th Cir. 1980)(odometer law case).

28   [36] *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 426, n.7 (2nd Cir. 1998).

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY FEES        Case No. C07-04400-JF-PVT

1  California courts have likewise recognized this principle in awarding fees under consumer protection

2  laws.

3       All of these same policy reasons exist in the context of consumer laws against Defendants

4  and other debt collectors who violate the law.  The cost and fee award encourages injured

5  individuals to pursue their claims.  The individuals then act as "private attorneys general" enforcing

6  not only their own rights, but those of all citizens.  Private actions act as a supplement to the public

7  enforcement actions which may be brought against Defendants by state regulatory agencies.

8  Hopefully, the policy of deterrence will be effectuated by a full award of costs and fees as well,

9  causing Defendants to hesitate to violate the law in the future.

10       Moreover, Defendants chose to "fight" over fees, obviously either in the hopes of trying to

11  reduce the amount to which Plaintiff is entitled, or to cause unnecessarily Plaintiff to expend even

12  more attorney's fees in litigating the fee petition, or both.  **The Court should not encourage either**

13  **motive by reducing the fee award.**

14       A defendant should not be encouraged to litigate in the expectation that the Court will reduce

15  the plaintiff's fee request, especially when defendant's fees to its own attorney are not similarly

16  scrutinized and reduced by the Court.[37]

17       An inadequate award diminishes the inducement created by fee-shifting statutes, and

18  undermines the goal of promoting private representation in FDCPA actions.  An award should be

19  made at a rate which recognizes the vindication of public policy expressed in the FDCPA.  "The

20  award of attorney's fees, as a practical matter, is a critical and integral part of [the creation of a

21  system of private attorneys general.]."[38]

22       **F.**    **Plaintiff Is Entitled to a Supplemental Award of Attorney Fees and Costs**
             **for the Time Expended upon this Motion.**

23

24  The Declaration submitted by Plaintiff's attorney details the time expended in this litigation

25

26  [37] *See also Eddy v. Colonial Life Ins. Co.*, 59 F.3d 201, 207-08, (D.C. Cir. 1995)(a fee award

27  deters noncompliance with the law and encourages settlement).

28  [38] *James v. Home Constr. Co.*, 689 F.2d 1357, 1359 (11th Cir. 1982).

-12-

through August 29, 2008.  Any additional time expended preparing a Reply brief or attending any hearing that the Court should decide to schedule will be submitted when the work of Plaintiff's counsel is completed.  An award of fees is appropriate for the time expended in pursuing a motion for award of attorney fees.[39]  "This Circuit allows the recovery of attorney's fees for time spent preparing and filing a motion for attorney's fees and costs."[40]  After completion of briefing and oral argument Plaintiff's counsel should be allowed leave of this Court to submit a Supplemental Declaration Supporting any additional attorney fees and costs.

### CONCLUSION

Based upon the Lodestar calculation, reasonable attorney fees should be awarded to Plaintiff in the amount of $7,057.50, non-taxable costs and expenses in the amount of $41.28 and taxable costs in the amount of $458.00.  A supplemental award of attorney fees should be made to compensate Plaintiff for any additional attorney time expended on this matter.  A proposed Order is attached for the Court's use.

Dated: August 29, 2008                    CONSUMER LAW CENTER, INC.


                                          By: /s/ Fred W. Schwinn
                                              Fred W. Schwinn, Esq.
                                              Attorney for Plaintiff
                                              SUSAN RAE OWENS

---

[39] *Haitian Refugee Center v. Meese*, 791 F.2d 1489, 1500-01 (11th Cir. 1986).

[40] *Cancio v. Financial Credit Network, Inc.*, 2005 U.S. Dist. LEXIS 13626, *16 (N.D. Cal. July 6, 2005) *citing*, *Jordan v. Multnomah County*, 815 F.2d 1258, 1264 (9th Cir. 1987);  *Rosenfeld v. S. Pac. Co.*, 519 F.2d 527, 530 (9th Cir. 1975).

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY FEES            Case No. C07-04400-JF-PVT